**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

JUDITH ANNE HEAGNEY-O'HARA,

                                        Plaintiff,

                    -vs-

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

DECISION AND ORDER

14-CV-6083-CJS

**APPEARANCES**

For Plaintiff:                    Judith Anne Heagney-O'Hara
                                  Post Office Box 18723
                                  Rochester, NY 14607

For Defendant:                    Kathryn L. Smith, A.U.S.A.
                                  United States Attorney's Office
                                  100 State Street, Room 620
                                  Rochester, NY 14614

                                  Elizabeth Rothstein, S.A.U.S.A. (on brief)
                                  Social Security Administration
                                  Office of General Counsel
                                  26 Federal Plaza Room 3904
                                  New York, NY 10278

**INTRODUCTION**

**Siragusa, J.** Plaintiff Judith Anne Heagney-O'Hara brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 *et. seq.* and 42 U.S.C. § 1381 *et. seq.*) claiming that Defendant Commissioner of Social Security ("Commissioner") improperly denied her application for benefits under Title II of the Act. Specifically, Plaintiff alleges that the decision of an Administrative Law Judge ("ALJ") denying her disability benefits was erroneous and not supported by the substantial evidence contained in the record, or was contrary to law. She seeks a reversal of that de-

cision. The Commissioner has moved for judgment on the pleadings, seeking affirmation of his determination. Mot. for Judgment on the Pleadings, Oct. 20, 2014, ECF No. 11. For the reasons stated below, the Commissioner's motion is granted and Plaintiff's application is denied.

## BACKGROUND

### *Procedural History and Factual Background*

Plaintiff was born in 1955. R. 106. She completed one year of college in 1974, and has not completed any type of specialized job training, trade, or vocational school. R. 149.

On December 15, 2010, R. 12, Plaintiff protectively filed for Disability benefits under Title II, and Supplemental Security Income ("SSI") benefits under Title XVI for. R. 108, 113. For both applications, she listed the date on which her disability started as November 26, 2000. Plaintiff's Title II claim was denied initially on March 10, 2011, but on the same date, she was granted SSI benefits. R. 12. Plaintiff pursued a hearing before an ALJ, which hearing was held on August 30, 2012, in Rochester, New York. At the hearing, a Vocational Expert ("VE") testified.

On September 7, 2012, the ALJ issued a decision denying Plaintiff's Title II disability application, finding at the fourth sequential step that she was not disabled, and that she was able to perform her past relevant work as an administrative assistant. As an alternative finding, the ALJ continued to the fifth sequential step, finding that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Plaintiff appealed, but on December 26, 2013, the Appeals Council denied her review, making the ALJ's decision the Commissioner's final decision. At oral argument on February 12, 2015, Plaintiff provided to the Court additional written arguments, which are filed as ECF No. 16.

**The ALJ's Findings**

The ALJ determined that Plaintiff met the coverage requirements under the Act through March 31, 2003, but not thereafter, and that she had not engaged in any gainful employment since March 9, 2001. R. 14. He determined she suffered from the following severe impairment: fractured humorous of her right (non-dominant) arm. *Id.* He also determined that despite that severe impairment, Plaintiff did not meet any of the requirements in the Listing of Impairments. R. 15.

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she was limited to frequent fingering, handling, and reaching. He noted that her fracture took five months to heal, and that Plaintiff related residual problems including difficulty brushing her hair, and lifting her arm, and that she could not do anything in 2003 or 2004 without a great amount of pain. Further, he noted that she informed the ALJ of a motor vehicle accident in 2006, after her date last insured, which she stated exacerbated her symptoms. The ALJ concluded that,

> the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 15. The ALJ then considered seven factors effecting his credibility assessment of plaintiff. R. 16.

After hearing testimony from the VE, the ALJ determined that Plaintiff was capable of performing her past relevant work as an administrative assistant, or, in the alternative, could perform the light duty positions of housekeeper cleaner, or counter clerk.

3

## DISCUSSION

### Jurisdiction and Scope of Review

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v NLRB*, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

### Plaintiff's Claims of Error

Plaintiff, proceeding *pro se*, has filed several documents either in support of her appeal, or in opposition to the Commissioner's position. Exhibit (Appeals Council denial), Apr. 3, 2014, ECF No. 4; Judith Anne Heagney-O'Hara letter to the Court, Oct. 1, 2014, ECF No. 10; Pl's Response to Motion, Dec. 1, 2014, ECF No. 13; Exhibits (Linden Oaks letter and physical therapy notes), Dec. 10, 2014, ECF No. 14; and Additional Exhibits (refiling of her November 6, 2014, exhibits to align them with her own copy), Feb. 17, 2015, ECF No. 16. In her complaint, Plaintiff claims that the ALJ's decision to deny benefits was not based upon substantial evidence and that the ALJ committed errors of law. Compl. ¶ 10, Feb. 21, 2014, ECF No. 1. In attempting to ascertain the basis for her

claims, the Court has reviewed the documents Plaintiff filed. She spends most of the time discussing what physical therapy she did receive, and how she was denied further physical therapy because of scheduling problems, a lack of steady living arrangements, and a lack of steady transportation. She also submits letters from a friend and rheumatologist, John R. P. Tesser, M.D., F.A.C.P., F.A.C.R., of Arizona Rheumatology Center, Ltd., in Phoenix, Arizona, and complains that the ALJ did not, in essence, consider Dr. Tesser as a treating physician. She states that she was told by her treating orthopedist, Dr. John Gorczya, to wait until the fracture was completely healed before beginning physical therapy. This meant that her arm atrophied during the five months it took to heal, and further, that the bone healed with a deformity. ECF No. 10 at 2. She concludes with this:

> There are judgment calls I believe in this case that need considerable thought, which I have mentioned in this letter and in summary below.
>
> -If Midtown Therapy had not ended my therapy with their statement "Once you can button your blouse, we are done."
>
> -If I was correctly informed of the proper route to move to at this point when physical therapy ended, I would have continued on at Midtown Therapy.
>
> -The severity of the injury of complication of extreme and extensive muscle atrophy of long term therapeutic need and compromised and challenged of bone deformity.
>
> -John[1] Tesser, M.D.'s credentials, care and input of this injury.
>
> -My life situation and obstacles indicated.
>
> -The time limit of guideline 'met' of prescription date I believe per Dr. Borghi-Cavallero.

---

[1] Plaintiff's filings repeatedly use a closed parenthesis ")" in place of the capital letter "J." The Court assumes this is merely a typographical error, and has substituted the letter "J" in place of the ")."

-The note of importance issue of fact and time period I believe I was re-
ceiving physical therapy at Lattimore Physical Therapy on Lattimore Road,
Rochester, NY 14620.

-The fact that I am still in physical therapy at Linden Oaks for this injury.

ECF No. 10, at 2–3.

### *Assessment of Plaintiff's Credibility and Step Four Analysis*

Plaintiff in essence is arguing that the ALJ improperly determined that her allega-

tion of total disability was not credible. R. 16. The Second Circuit discussed the Com-

missioner's responsibility to make credibility determinations, writing:

It is the role of the Commissioner, not the reviewing court, "to resolve evi-
dentiary conflicts and to appraise the credibility of witnesses," including with
respect to the severity of a claimant's symptoms. *Carroll v. Sec'y of Health &
Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Social Security regula-
tions provide a two-step process for evaluating symptoms such as pain,
fatigue, shortness of breath, weakness, or nervousness. First, the ALJ must
determine whether the medical signs or laboratory findings show that a
claimant has a medically determinable impairment that could reasonably be
expected to produce the claimant's symptoms. If so, the ALJ "must then
evaluate the intensity and persistence of [the claimant's] symptoms" to
determine the extent to which the symptoms limit the claimant's capacity for
work. 20 C.F.R. § 416.929(c)(1). The ALJ is required to consider all avail-
able evidence, including the claimant's history, medical signs and labora-
tory findings, and statements from the claimant, the claimant's treating or
nontreating source, or other persons about how the symptoms affect the
claimant. *Id.* Objective medical evidence is useful, but the ALJ will not reject
statements about the intensity and persistence of pain and other symptoms
"solely because the available objective medical evidence does not sub-
stantiate [the claimant's] statements." *Id.* § 416.929(c)(2). However, if a
claimant's statements about his or her symptoms are not substantiated by
the objective medical evidence, the ALJ must consider the other evidence
and make a finding on the credibility of the individual's statements. See
SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *4 (July 2, 1996). In
doing so, the ALJ should consider:

(i) [The claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of [the claimant's]
pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medica-

tion [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms . . . ; and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *2. While it is "not sufficient for the [ALJ] to make a single, conclusory statement that" the claimant is not credible or simply to recite the relevant factors, 1996 SSR LEXIS 4, [WL] at *2, remand is not required where "the evidence of record permits us to glean the rationale of an ALJ's decision," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

*Cichocki v. Astrue*, 534 Fed. Appx. 71, 75–76 (2d Cir. 2013).

Here, the ALJ, applying the two step process outlined in *Cichocki*, found that the medical evidence in the record did not support Plaintiff's claim of complete disability. First, he noted that her treatment had been routine and conservative in nature. In the emergency department when she first broke her arm, Plaintiff was advised to undergo surgery, which she refused. R. 16, 510. The entry in the medical record reads as follows: "Option of surgery / ORI E presented to patient. Pt. did not wish to undergo surgery at this point opting for nonsurgical mmt. Benefits of earlier recovery and ↑ function w/ surgery presented. At this point, pt. declined." R. 432. Instead, Plaintiff was fitted for a shoulder immobilizer. *Id*. The medical records show that after six weeks, Plaintiff did follow up with physical therapy. Her friend, Dr. Tesser, reported that despite therapy, Plaintiff "has not achieved full restoration of range of motion" in her arm, R. 454, describing that she could not lift more than "several pounds" without pain, and was unable to perform "quick

7

movement" with her right upper extremity, R. 456. Dr. Tesser relied on reports by others

to draw his conclusions and does not appear to have ever examined Plaintiff. R. 454. The

ALJ did not give great weight to Dr. Tesser's assessment.

Plaintiff underwent an examination by Harbinder Toor, M.D., a consultative ex-

aminer on February 25, 2011, who wrote in his report that Plaintiff

> has pain in the right shoulder. Forward elevation 120 degrees, abduction
> 120 degrees, internal and external rotation full, adduction full with pain in
> the right shoulder Left shoulder full ROM. She also has pain in the right
> elbow, but the movements are full ROM. Left elbow full ROM. Full ROM of
> wrists bilaterally. No joint inflammation, effusion, or instability. Strength 5/5
> in proximal and distal muscles. No muscle atrophy. No sensory abnormality.
> Reflexes physiologic and equal.

R. 400. Dr. Toor concluded that Plaintiff,

> has moderate limitation for standing, walking, bending, or heavy lifting. She
> has mild to moderate limitation in pushing, pulling, and reaching with pain in
> the right shoulder. She has mild limitation for twisting, bending, extending of
> the cervical spine. Pain and balance due to injury in the right ankle and also
> because of pain in the right hip and back, and also history of osteoporosis
> interfere with her daily routine of walking and standing a long time because
> she has a history of being prone to fractures due to fall because of osteo-
> porosis.

R. 401.

The ALJ's decision did not comment on Dr. Toor's examination, and placed greater

weight on medical expert witness Donald Goldman, M.D., a board certified orthopedic

surgeon. R. 17, 497. Dr. Goldman, who testified by telephone at the August 30, 2012,

administrative hearing, pointed out that while Plaintiff's fracture may have initially met the

listing requirement to show disability, it lasted only five months, not the 12 required to

meet the listing. R. 17, 499, 518. Dr. Goldman also noted that the record did not show

Plaintiff had any difficulty working with her hands, fingers, or wrists, but only working at

shoulder level, or above. R. 518–20. Further, the ALJ relied on Plaintiff's testimony that

although she had difficulty brushing her hair and lifting her arm, she could lift a gallon of milk, R. 527, and button a shirt. *Id.* Dr. Goldman did, however, raise questions during his testimony. For example, he questioned whether any doctor had examined her during the five-month healing period, and asked whether anyone measure her grip strength, range of motion of her elbow and wrist, and questioned why was she continued in physical therapy for over a year with no significant improvement. R. 519–21. None of Dr. Goldman's questions was answered.

In her testimony, Plaintiff stated that the fracture healed with a deformity and she wondered whether that deformity might be causing her muscle problems. R. 525, 552. In response to the ALJ's questions, Plaintiff testified that she did not have much of a problem using her right hand, and a bit of a problem with her elbow, in that she could not fully extend her arm. R. 526. At the hearing, the ALJ asked Plaintiff the following questions and Plaintiff gave the following responses:

Q. Yes. All right. Let me talk a little bit more about the use of your hand. After you had gone—after you had had the fall, you had the fracture, you healed, you went through therapy. Were you having problems using your right hand at all?

A. Not much.

Q. Okay. How about your right elbow, were you having any problems with the elbow?

A. A bit, yeah.

Q. Okay.

A. I remember that.

Q. What kind of problems were you having at that point?

A. Bending, doing any type of—

Q. Okay. Could you fully extend your arm?

A. Not fully. . . . So it was very stiff.

Q. All right. How about lifting things, could you lift a gallon of milk with your right hand?

A. Yeah, I think I could.

Q. Okay.

A. Carefully, you know.

Q. Could you—well, you used to wait on tables. Could you carry trays? Could you carry a tray?

A. I don't think I would have, no. No.

R. 526.

As explained above, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. The Court finds that substantial evidence in the record supports the ALJ's RFC determination.

The ALJ cited to the opinion by Ivy Green, L.M.T., C.A.T., in April 2001, "that the claimant had restricted range of motion in the right arm and she was unable to fully extend her right arm in any direction." R. 16. The ALJ cited to Dr. Tesser's opinion that Plaintiff "had not achieved full use of her non-dominant right arm . . . [s]he lacked full range of motion with difficulty extending, abducting and rotating her right arm." R. 16. The ALJ did not give great weight to Dr. Tesser's opinion, but did give weight to Dr. Goldman's opinion, writing: "Dr. Goldman also noted that the claimant's difficulty with range of motion would not have affected her ability to use her hands, fingers or wrists. He noted that she may have problems working at shoulder level or above." R. 17. Dr. Goldman's testimony

10

on this point was as follows:

> Q. [B]ased on your review, can you tell me what functional limitations existed for the claimant after the healing of the humerus?
>
> A. The answer is, I'm going to assume that this lady's—the strength in her hand and wrist were fine. . . .
>
> A. What I can't—and this is going to be—if there's a problem, it's a positional problem. Let me give you an example, she may have problems working at shoulder level or above.

R. 519–20. Dr. Goldman's testimony, combined with the answers Plaintiff provided to the ALJ's questions, provide a substantial basis for the ALJ's RFC determination that Plaintiff retained the residual functional capacity to perform substantially all of the requirements of light work. R. 18.

### *Disability Determination*

Using his determination that Plaintiff retained the ability to perform light work, the ALJ's conclusion that she could therefore perform her past relevant work as an administrative assistant, which is a sedentary position, is supported by substantial evidence in the Record. Further, the Vocational Expert's testimony supported the ALJ's alternative conclusion at step five that Plaintiff could perform other work that exists in significant numbers in the national economy.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's residual functional capacity determination is supported by substantial evidence in the Record, as is his determination that Plaintiff can perform her past relevant work as an administrative assistant. Therefore, the Court grants the Commissioner's motion, ECF No. 11, and affirms the judgment of the Commissioner of Social Security. 42 U.S.C. § 405(g). The Clerk is di-

rected to enter judgment for the Commissioner and close the case.

IT IS SO ORDERED.

DATED:   February 27, 2015
            Rochester, New York

ENTER:            /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge